UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                       :

KINGVISION PAY-PER-VIEW, LTD.,

                                       :       **ORDER**

                  Plaintiff,

                                       :       05 Civ. 10283 (SAS) (JCF)

        -against-

                                       :

ERASMO RAMIREZ, et al.,

                                       :

                  Defendants.
------------------------------------- X
SHIRA A. SCHEINDLIN, U.S.D.J.:

        I have reviewed the attached Report and Recommendation ("R&R") of United States Magistrate Judge James C. Francis, dated August 11, 2006, which recommends that judgment be entered in plaintiff's favor against defendant Erasmo Ramirez, individually and d/b/a El Chupe Restaurant, in the amount of $15,525.00, and that judgment be entered in plaintiff's favor against defendant Roman Andino Bar Restaurant Corp. d/b/a Los Chorritos Sports Bar, in the amount of $15,525.00  Although defendants were given the opportunity to file objections to the R&R, they failed to do so.  Based on my independent review, I find the amount of damages to be reasonable and therefore adopt the R&R in full.

        The Clerk of the Court is directed to prepare a Judgment in accordance with the R&R and close this case.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           September 21, 2006

- Appearances -

**For Plaintiff:**

Richard A. Klass, Esq.
16 Court Street, 29th Floor
New York, New York 11241
(718) 643-9788

**Defendants (Unrepresented):**

Erasmo Ramirez
El Chupe Restaurant
216 East 170th Street
Bronx, New York 10456

Erasmo Ramirez
556 West 188th Street, Apt. 22
New York, New York 10040

Roman Andino Bar Restaurant Corp.
2503 Third Avenue
Bronx, New York 10451
Attn: Francisco Andino

Roman Andino Bar Restaurant Corp.
2329 First Avenue
New York, New York 10035
Attn: Francisco Andino



```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -:
KINGVISION PAY-PER-VIEW CORP.,           :   05 Civ. 10283 (SAS) (JCF)
LTD.                                     :
501 Fairway Drive                        :   REPORT AND
Deerfield Beach, Florida  33441          :   RECOMMENDATION
                                         :
              Plaintiff,                 :
                                         :
     - against -                         :
                                         :
ERASMO RAMIREZ, Individually, and        :
d/b/a EL CHUPE RESTAURANT                :
                                         :
and                                      :
                                         :
FRANCISCO HERNANDEZ, Individually,       :
and d/b/a FRANK POOL ROOM                :
RESTAURANT                               :
                                         :
and                                      :
                                         :
FRANCISCO ANDINO, Individually, and      :
ROMAN ANDINO BAR RESTAURANT CORP.,       :
d/b/a LOS CHORRITOS SPORTS BAR           :
                                         :
              Defendants.                :
- - - - - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE SHIRA A. SCHEINDLIN, U.S.D.J:

The plaintiff, Kingvision Pay-Per-View, Ltd. ("Kingvision"), brings this action against the defendants, Erasmo Ramirez, individually and d/b/a El Chupe Restaurant, Francisco Andino, individually, and Roman Andino Bar Restaurant Corp d/b/a Los Chorritos Sports Bar,[1] pursuant to the Cable Communications Policy Act of 1984 (the "Cable Act"), 47 U.S.C. § 521 et seq., for the unauthorized interception and commercial exhibition of a closed-

---

[1] Claims against Francisco Hernandez individually and d/b/a Frank Pool Room Restaurant have been settled and are no longer at issue.

1

circuit television program. Kingvision seeks statutory damages under both section 553 and section 605 of the Cable Act, as well as an award of reasonable costs, including attorneys' fees, pursuant to Section 605(e)(3)(B)(iii).

After the defendants failed to answer the complaint, the plaintiff moved for a default judgment and the case was referred to me for an inquest on damages. A hearing was held on June 3, 2006, and, although notice was sent to the defaulting defendants, they did not appear. The following findings are therefore based on the evidence presented by the plaintiff.

Background

On October 2, 2004, Felix Trinidad and Ricardo Mayorga were contestants in a professional prizefight. (Complaint ("Compl."), ¶ 13). Kingvision owned the exclusive right to exhibit the closed-circuit telecast of this fight in commercial establishments in New York. (Compl., ¶ 13). It sublicensed these rights to a variety of closed-circuit locations such as theaters, bars, lounges, and restaurants. (Compl., ¶ 14).

In order to ensure limited access to the programming, Kingvision coded or scrambled its transmission of the event. (Compl., ¶ 17). Kingvision then distributed the video feed to various commercial entities that had paid the appropriate fee. (Compl., ¶¶ 15-16).

In this case, however, the defendants received and exhibited the fight without paying the fee. (Compl., ¶ 18). On the night of

the event, Kingvision sent out investigators throughout the New York region to do random checks on establishments that may have been showing the fight illegally. (Affidavit of Marcus W. Corwin dated March 24, 2006 ("Corwin Aff."), attached as Exh. C to Plaintiff's Memorandum of Law ("Pl. Memo."), ¶ 8). On the evening of the event, one of these investigators, Patricia Ferraro, visited each of the defendants' establishments and observed that the fight was being shown illegally. (Affidavits of Patricia Ferraro dated October 4, 2004 ("Ferraro Aff."), attached as Exh. D to Pl. Memo.").

Ms. Ferraro entered Los Chorritos Sports Bar at 2329 First Avenue in Manhattan at approximately 11:00 p.m. and observed that the fight was being shown on two televisions and that there were about twenty people inside the bar. (Ferraro Aff.). Ms. Ferraro later entered El Chupe Restaurant at 216 East 170th Street in the Bronx at approximately 11:40 p.m. and noted that the fight was being shown on one television and that there were approximately fifteen people in the restaurant. (Ferraro Aff.). Upon learning of the unauthorized use of the telecast, Kingvision filed the instant action.

Discussion

   A.   Statutory Framework

The plaintiff alleges that the defendants violated both sections 553 and 605 of the Cable Act. Section 553(a) of the Cable Act provides, in pertinent part: "No person shall intercept or

3

receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Subsection (c) creates a civil cause of action for "[a]ny person aggrieved by any violation of subsection (a)(1)." Civil remedies include injunctive relief, damages, costs and attorneys' fees. 47 U.S.C. § 553(c)(2).

Section 605(a) of the Cable Act provides, in part: "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). Subsection (e)(3) creates a right of action for any person aggrieved, and remedies may include injunctive relief, statutory damages, and costs and attorney fees. 47 U.S.C. § 605(e)(3)(B)(i)-(iii).

B.  Liability

The defendants have failed to appear in this action and have been adjudged in default. "[A] default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability." Time Warner Cable of New York City v. Barbosa, No. 98 Civ. 3522, 2001 WL 118608, at *4 (S.D.N.Y. Jan. 2, 2001) (quoting Bambu Sales, Inc. v. Ozak Trading, Inc., 58 F.3d 849, 854 (2d Cir. 1995)). Therefore, all the allegations are accepted as true except those relating to the amount of damages. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Time Warner Cable of New York City v.

Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 487 (S.D.N.Y. 1999); Kingvision Pay-Per-View, Ltd. v. New Paradise Restaurant, No. 99 Cv. 10020, 2000 WL 378053, at *1 (S.D.N.Y. April 11, 2000). Here, the plaintiff's allegations establish violations of the Cable Act.

Los Chorritos Sports Bar and Erasmo Ramirez doing business as El Chupe Restaurant are clearly liable under section 553, as they intercepted the communications of a cable system without authorization. With respect to section 605, while Kingvision does not provide much detail on the technology used in transmitting the telecast, it does refer to satellite transmissions, which indicate that the broadcast originated with a radio transmission. Therefore, the defendants' conduct included the unauthorized interception of radio signals in violation of section 605 of the Cable Act. See, e.g., New Paradise Restaurant, 2000 WL 378053, at *1-2; Kingvision Pay-Per-View, Ltd. v. Las Cazuelas Mexican Restaurant, No. 99 Civ. 10041, 2000 WL 264004, at *2-3 (S.D.N.Y. March 9, 2000).

Kingvision has not, however, made any allegations of the personal knowledge or involvement of Francisco Andino. "[O]fficers and directors of a corporation are not generally liable for tortious acts of the corporation unless they participate in or have knowledge of such acts." King Vision Pay-Per-View Corp., Ltd. v. Tardes Calenas Moscoro, Inc., No. 01 Civ. 9775, 2004 WL 473306, at *3 (S.D.N.Y. 2004). Consequently, Mr. Andino can not be held

individually liable for violations of the Cable Act on the basis of the allegations in the complaint.

C.   Damages

Both Section 553 and Section 605 of the Cable Act allow a plaintiff to choose between actual and statutory damages. 47 U.S.C. §§ 553(c)(3)(A), 605(e)(3)(C)(i). Statutory damages range from $1,000 to $10,000 for ordinary violations of Section 605, 47 U.S.C. § 605(e)(3)(C)(i)(II), but may be enhanced to $100,000 for willful violations of this section or reduced to $250 for innocent ones. 47 U.S.C. §§ 605(e)(3)(C)(ii)-(iii). Section 553 allows recovery in the range of $250 to $10,000 for ordinary violations, 47 U.S.C. § 553(c)(3)(A)(ii), but courts may increase the award to $50,000 for willful violations or decrease it to $100 for unwitting transgressions. 47 U.S.C. §§ 553(c)(3)(B)-(C).

Kingvision seeks an award of statutory damages pursuant to both sections, but can recover only under one of the two. See Barbosa, 2001 WL 118608, at *5; Cablevision Systems Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991). In similar cases, some courts have tried to arrive at damage awards by estimating the profits obtained by the defendant or the licensing fee that the plaintiff would have charged. See, e.g., Googies Luncheonette, 77 F. Supp. 2d at 490 (awarding $50 per patron); Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F. Supp. 107, 111 (E.D.N.Y. 1997)(same); Cablevision Systems Corp. v. 45 Midland Enterprises,

6

Ltd., 858 F. Supp. 42, 45 (S.D.N.Y. 1994)(same). Other courts have awarded a flat sum for each violation. See, e.g., New Paradise Restaurant, 2000 WL 378053, at *2 (awarding total of $20,000); Las Cazuelas Mexican Restaurant, 2000 WL 264004, at *3 ($12,500); Maxie's North Shore Deli, 1991 WL 58350, at *2 ($30,000).

Calculation of the award should be generous enough to ensure that the plaintiff is fully compensated and to deter future violations. In this case, the defendants likely profited from the purchase of food and drink made by the customers attracted to each establishment by the prospect of watching the fight. A damage award based exclusively on licensing fees, which would be equal to $20 multiplied by the capacity of each establishment, would undercompensate the plaintiff because the availability of unauthorized access to the program reduces demand and depresses the prices that Kingvision can charge for sublicenses. See Cablevision Systems New York City Corp. v. Faschitti, No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996).

An award of $5,000 against each defendant is warranted here. Although the plaintiff does not supply maximum occupancy figures for these establishments, this figure should be well in excess of the probable licensing fee and likely more than each establishment would have made in profits on a per-customer basis. At the same time, it represents a recognition that maximum statutory damages should be reserved for cases where there is evidence of more

substantial injury to the plaintiff or profit by the defendants. See Kingvision Pay-Per-View, Ltd. v. Batista, 05 Civ. 50614, 2005 WL 2999427, at *1 (E.D.N.Y. Oct. 5, 2004) ($9,500 in statutory damages for a restaurant with an estimated capacity of 250 and approximately 190 patrons that illegally displayed the Trinidad-Mayorga bout). In this case, the investigator did not observe more than 20 patrons at either establishment or note that the defendants had advertised the fight or were collecting a cover charge. (Ferrara Aff.). The statutory award in this case is also consistent with the statutory award in a similar case involving the same bout and similarly-sized establishments. See Kingvision Pay-Per-View, Ltd. v. Brito, No. 05 Civ. 1042, 2006 WL 728408, at *2 (S.D.N.Y. March 20, 2006).

Kingvision is entitled to a further enhancement because the violations were willful and done with the purpose of profiting commercially. See 47 U.S.C. § 605(e)(3)(C)(ii). In order to access the telecast, it would have been necessary to use an unauthorized decoder, to illegally divert cable service into the store, or improperly relocate an authorized decoder. In any of these scenarios, the illegality of the action would have been apparent to the perpetrator. And there can be little doubt that the defendants were motivated by profit in showing the fight. While the plaintiff does not allege that the defendants advertised the telecast, cf. Home Box Office v. Carlim, Inc., 838 F. Supp. 432, 435 (E.D. Mo. 1993) (lack of advertising a factor in finding

8

violation non-willful), the defendants clearly used the fight to entertain customers who were purchasing beverages and food.

Under these circumstances, enhanced damages of $10,000, in addition to the $5,000 awarded above, are appropriate. The court made a similar award in Home Box Office, a Division of Time Warner Entertainment Co. v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993). Judge Cabranes' comments in that case rejecting a more substantial award are equally applicable here: "[t]here are no allegations of repeated violations over an extended period of time, of substantial unlawful monetary gains by the defendants, or, conversely, of any significant actual damages to the plaintiff." Id.; see also Barbosa, 2001 WL 118608, at *5 (duration of violation as factor in enhancement); Las Cazuelas Mexican Restaurant, 2000 WL 264004, at *3 (quoting with approval same language from Champs of New Haven). The amount of enhanced damages awarded in the instant case is also consistent within the awards given by the courts in this circuit to the same plaintiff for violations by similar defendants. See Kingvision Pay-Per-View Ltd. v. Cardona, No. 03 Civ. 3839, 2004 WL 1490224, at *2, *4 (S.D.N.Y. June 30, 2004); Kingvision Pay-Per-View Ltd. v. Lalaleo, 429 F. Supp. 2d 506, 515 (E.D.N.Y. 2006) ($10,000 in enhanced damages awarded against small business with no evidence of advertising or prior violations); Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp. 2d 59, 64 (E.D.N.Y 2006) (same).

D.  Attorneys' Fees

An award of costs, including attorneys' fees, is mandatory under § 605. 47 U.S.C. § 605(e)(3)(B)(iii); see also International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993). Richard A. Klass, counsel for Kingvision, devoted 4.2 hours of work to this case. (Affidavit of Richard A. Klass dated April 4, 2006 ("Klass Aff."), attached as Exh. E to Pl. Memo., ¶¶ 3, 4, 9). An attorney for fourteen years, Mr. Klass billed at a rate of $250 per hour. (Klass Aff., ¶¶ 5, 8). The time expended by counsel was reasonable and the rate requested is commensurate with that generally charged for similar work in this district. Therefore, the request for fees should be granted in the full amount of $1,050.00, allocated evenly between the defaulting defendants.

Conclusion

For the reasons set forth above, I recommend that judgment be entered in favor of the plaintiff and against the defendant Erasmo Ramirez, individually and d/b/a El Chupe Restaurant, in the amount of $15,525.00, and that judgment be entered in favor of the plaintiff and against defendant Roman Andino Bar Restaurant Corp d/b/a Los Chorritos Sports Bar, also in the amount of $15,525.00. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of

the Court, with extra copies delivered to the chambers of the Honorable Shira A. Scheindlin, Room 1620, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York, 10007. Failure to file timely objections will preclude appellate review.

                                    Respectfully submitted,

                                    JAMES C. FRANCIS IV
                                    UNITED STATES MAGISTRATE JUDGE

Dated      New York, New York
            August 11, 2006

Copies mailed this date to:

Richard A. Klass, Esq.
16 Court Street, 29th Floor
Brooklyn, New York 11241

Erasmo Ramirez
El Chupe Restaurant
216 East 170th Street
Bronx, New York 10456

Erasmo Ramirez
556 West 188th Street, Apt. 22
New York, New York 10040

Roman Andino Bar Rest. Corp.
Attn: Francisco Andino
2329 First Avenue
New York, New York 10035

Roman Andino Bar Restaurant Corp.
Attn: Francisco Andino
2503 Third Avenue
Bronx, New York 10451